| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| M. Jonathan Hayes (Bar No. 90388)<br>Matthew D. Resnik (Bar No. 182562)<br>Roksana D. Moradi (Bar No. 266572)<br>**SIMON RESNIK HAYES LLP**<br>15233 Ventura Blvd., Suite 250<br>Sherman Oaks, CA 91403<br>**Telephone:** (818) 783-6251<br>**Facsimile:** (818) 827-4919<br>jhayes@SRHLawFirm.com<br>matthew@SRHLawFirm.com<br>roksana@SRHLawFirm.com<br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* **DEBTOR** | |

## UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA – <u>SAN FERNANDO VALLEY DIVISION</u>

| In re:<br><br><br>    GRIGOR DUMANYAN,<br><br><br><br><br><br><br>                                    Debtor(s). | CASE NO.: 1:14-bk-13347-VK<br><br>CHAPTER: 11 |
|---|---|
| | **INDIVIDUAL DEBTOR'S <u>FIRST AMENDED</u> CHAPTER 11 PLAN OF REORGANIZATION**<br><br>DATE: 11/5/2015<br>TIME: 2:00 p.m.<br>COURTROOM: 301<br>PLACE:<br>    21041 Burbank Blvd.<br>    Woodland Hills, CA 91367 |

This plan of reorganization (the Plan) under Chapter 11 of the Bankruptcy Code provides for restructuring of the debts of the above-named Debtor. If confirmed, the Plan will bind all creditors provided for in the Plan, whether or not they file a proof of claim, accept the Plan, object to confirmation, or have their claims allowed. All Creditors should refer to Articles I-IV of this Plan for the precise treatment of their claims. A disclosure statement (the Disclosure Statement) that provides additional information is being served with this Plan. The Disclosure Statement is explanatory only; the language used in the Plan is binding. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one.**

## Article I
## Treatment of Unclassified Claims

Under § 1123(a)(1)(i) administrative expense claims allowed under § 503(b) and entitled to priority under § 507(a)(2) (including the claims of professionals, United States trustee fees, and postpetition domestic support obligations; (ii) involuntary gap period claims under § 507(a)(3); and (iii) priority tax claims under § 507(a)(8) are not classified and are not entitled to vote on confirmation of the Plan. These claims shall be treated as follows:

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 1                    **F 2081-1.PLAN**

A.    <u>Professional Fees</u>.  Professional fees may only be paid upon application to and approval by the court.  The Debtor will pay professional fees in full in cash on the later of (i) the Effective Date or (ii) upon court order, except to the extent that a holder of such claim agrees to other terms.

~~B.~~    <u>Other Administrative Claims</u>.  The Debtor will pay other claims allowed under § 503(b) and entitled to priority under § 507(a)(2), including domestic support obligations arising postpetition[1] and United States trustee fees, as described in the chart below.  ~~, in  full on the Effective Date (although expenses arising and paid in the ordinary course of Debtor's financial affairs may be  paid as due), except to the extent that a holder of these claims agrees to other terms.~~[2]

C.    <u>Tax Claims</u>. The Debtor will pay claims entitled to priority under § 507(a)(8) in full over time with ____%  interest in equal amortized payments in accordance with § 511.  Payments will be made quarterly, due on the first day of the quarter, starting on the first such date after the Effective Date and ending on the last such date that is no more than 5 years after the  entry of the order for relief.[3]

D.    <u>Involuntary Gap Period Claims pursuant to § 507(a)(3)</u>.  The Debtor will pay claims allowed under § 502(f) in full on, or as soon as practicable after, the Effective Date except to the extent a holder of such claim agrees to other terms.[4]

| Description | Amount Owed | Treatment |
|---|---|---|
| M. Jonathan Hayes (Attorney for the Debtor) | $15,000 (estimated total) | Counsel has agreed to receive payment for his fees, once approved by the Court, from the Debtor's income as shown in the income and expense projections (EXB. A to Disc. State.). |
| Clerk's Office Fees | $0  (estimated | Paid when due. |
| Office of the U.S. Trustee Fees | $325 - $650 per quarter (estimated) | Quarterly fees, as required by 28 U.S.C. §1930(a)(6), shall be paid until a final decree is entered or the case is dismissed or converted. |

**Article II**
**Classification and Treatment of Claims**

<u>**Classes 1(a)-(e):  Priority Claims**</u>.

These impaired classes include allowed unsecured claims entitled to priority under § 507 (except administrative claims under § 507(a)(2), involuntary gap period claims under § 507(a)(3) and priority tax claims under § 507(a)(8), which are unclassified and treated in Article I).  For instructions on voting, see Part 2 of the Disclosure Statement.  If any Class does not vote to accept the Plan, then each claim in the non-accepting class will be paid in full on the Effective Date (except to the extent a holder of a claim in the class agrees to other terms).  Creditors in Class 1 are treated as follows (*Check each box that applies*):

☒    Debtor has no creditors in Class 1

☐    Class 1(a): Unsecured domestic support obligation claims entitled to priority under § 507(a)(1).  Debtor proposes to pay each claim in Class 1(a) in full over_____years, with_____% postconfirmation interest.  Payments will be made in equal ☐monthly ☐quarterly amortized installments, due on the first day of each calendar  ☐monthly ☐ quarterly, starting on the first such date after the Effective Date.  This class is impaired and entitled to vote on confirmation of the Plan.

☐    Class 1(b): Wage and commission claims entitled to priority under § 507(a)(4).  The Debtor proposes to pay each claim in Class 1(b) in full over_____years, with_____% postconfirmation interest.  Payments will be made in equal ☐ monthly ☐ quarterly amortized installments, due on the first day of each calendar [month][quarter], starting on the first such date after the Effective Date.  This class is impaired and entitled to vote on confirmation of the Plan.

☐    Class 1(c): Employee benefit plan contribution claims entitled to priority under § 507(a)(5).  The Debtor proposes to pay each claim in Class 1(c) in full over_____years, with_____% postconfirmation interest.  Payments will be made in equal ☐monthly ☐quarterly amortized installments, due on the first day of each calendar ☐month ☐ quarter, starting on the first such date after the Effective Date.  This class is impaired and entitled to vote on confirmation of the Plan.

---

1    Section 1129(a)(14) requires payment of all domestic support obligations arising postpetition.
2    Section 1129(a)(9)(A) requires payment in full of administrative expenses on the Effective Date.
3    Payment of priority tax claims in full within 5 years of the petition date and on terms not less favorable than those accorded the most favored nonpriority creditor is required by § 1129(a)(9)(C)  IF THE ABSOLUTE PRIORITY RULE APPLIES AND CLASS 6(B) VOTES TO REJECT THE PLAN, ADD THE FOLLOWING: "Accordingly, if Class 6(b) votes to reject the Plan and is paid in full over time, tax priority claimants will receive an interest rate of_____% and maturity on_____.  This treatment is at least as favorable as that received by Class 6(b)."
4    This treatment is required by § 1129(a)(9)(A).

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 2                    **F 2081-1.PLAN**

☐        Class 1(d): Grain producer and fisherman claims entitled to priority under § 507(a)(6).  The Debtor proposes to pay each claim in Class 1(d) in full over_____years, with_____% postconfirmation interest.  Payments will be made in equal ☐ monthly ☐ quarterly amortized installments, due on the first day of each calendar ☐ month ☐ quarter, starting on the first such date after the Effective Date.  This class is impaired and entitled to vote on confirmation of the Plan.

☐        Class 1(e): <u>Consumer deposit claims entitled to priority under § 507(a)(7)</u>.  The Debtor proposes to pay each claim in Class 1(e) in full over_____years, with_____% postconfirmation interest.  Payments will be made in equal ☐ monthly ☐ quarterly amortizing installments, due on the first day of each calendar ☐ month ☐ quarter, starting on the first such date after the Effective Date.  This class is impaired and entitled to vote on confirmation of the Plan.

## Class 2: Secured claims on Debtor's principal residence.

A.        <u>Unimpaired secured claims on Debtor's principal residence</u>.  These classes include claims secured solely by the Debtor's principal residence.  All arrearages shall be paid on, or as soon as practicable after, the Effective Date unless the holder of the claim agrees to other terms.  Regular payments shall be made as they come due based on their respective governing loan documents, and except with respect to curing the arrearages, the Plan does not alter the legal, equitable or contractual rights of the creditor.  The Debtor shall maintain current payments and the Plan must not otherwise alter the legal, equitable or contractual rights of the creditors to which that claim entitles the holder of the claim.

These classes are unimpaired and not entitled to vote on the Plan.

Class 2(a):  Secured claim of:
Property address or description of collateral:
Priority of lien:
Total amount of allowed claim:
Amount of arrearages:
Regular monthly payment:

Class 2(b):  Secured claim of:
Property address or description of collateral:
Priority of lien:
Total amount of allowed claim:
Amount of arrearages:
Regular monthly payment:

B.        <u>Impaired secured claims on Debtor's principal residence</u>.  These classes of secured claims on the Debtor's principal residence are impaired and therefore, entitled to vote under the Plan.  The arrearages in the sum of $_____shall be paid over_____years with_____% interest.  To cure the arrearages, the payments shall be made in ☐ monthly ☐ quarterly amortized installments beginning on the first day of each calendar ☐ month ☐ quarter after the Effective Date (Cure Payments).  Ongoing payments shall be made as they come due based on their respective governing loan documents (Regular Payments).  The claim will be paid in full as a secured claim in this class pursuant to § 1123(b)(5).

Class 2(c):  Secured claim of:
Property address or description of collateral:
 Priority of lien:
Amount of arrearages: $_____
Total amount of allowed claim as of_____:
☐ Monthly ☐ quarterly Cure Payment amount: $ _____
☐ Monthly ☐ quarterly Regular Payment amount: $ _____
Total ☐ monthly ☐ quarterly payments: $ _____
Total amount of payments (over time) to satisfy the secured claim: $_____
Interest rate (to compensate creditor because claim is paid over time):_____%
First payment date: _____

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

Amount of each installment: $ _____
Frequency of payments: _____
Total yearly payments: $_____
Final payment date: _____
Monthly payments will be due on the first day of the month.

Class 2(d):  Secured claim of:
Property address or description of collateral:
 Priority of lien:
Amount of arrearages: $_____
Total amount of allowed claim as of: _____
☐ Monthly ☐ quarterly Cure Payment amount: $ _____
☐ Monthly ☐ quarterly Regular Payment amount: $_____
Total ☐ monthly ☐ quarterly payments: $_____
Total amount of payments (over time) to satisfy the secured claim: $ _____
Interest rate (to compensate creditor because claim is paid over time):_____%
First payment date: _____
Amount of each installment: $ _____
Frequency of payments: _____
Total yearly payments: $ _____
Final payment date: _____
Monthly payments will be due on the first day of the month.

///
///
//
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Class 3: Unimpaired secured claims on property other than the Debtor's principal residence.**

This class includes claims secured by a lien on property other than the Debtor's principal residence in which Debtor has an interest that is unimpaired under the Plan.  Debtor will cure any default that occurred before or after the petition date in this case, reinstate the maturity of that claim as such maturity existed before the default, maintain current payments, and not otherwise alter the legal, equitable or contractual rights to which that claim entitles the holder of the claim.  All arrearages shall be paid in full on, or as soon as practicable after, the Effective Date, unless the holder of the claim agrees to other terms.  Regular payments made thereafter will be made when due under the documents governing claim.

These classes are unimpaired and not entitled to vote on the Plan.

Class 3(a):  Secured claim of:
Description of collateral:
Priority of lien:
Total amount of allowed claim:
Amount of arrearages:
Regular monthly payment:

Class 3(b):  Secured claim of:
Description of collateral:
Priority of lien:
Total amount of allowed claim:
Amount of arrearages:
Regular monthly payment:

**Class 4: Unimpaired secured claims on Collateral to be Surrendered by Debtor.**

This class includes claims secured by a lien on property in which the Debtor has an interest that are unimpaired under the Plan.  Debtor will not retain interest in such property(ies) and will surrender such collateral to the secured creditor:    ☐ not later than Effective Date    ☐ by (date): _____

Class 4(a):  Secured claim of: _____
Description of collateral: _____
Class 4(b):  Secured claim of: _____
Description of collateral: _____

///
///
//
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                    Page 5                    **F 2081-1.PLAN**

**Class 5: Impaired secured claims**

        The following classes include claims secured by a lien on property other than the debtor's principal residence in which Debtor has an interest, other than the secured claims in Class 2 and the unimpaired secured claims in Classes 3 and 4.

        The secured portion of the following impaired class(es) shall be paid as set forth below.  The arrearages in the sum of $_____ shall be paid over_____ years with_____% interest.  To cure the arrearages, the payments shall be made in ☐ monthly ☐ quarterly amortized installments beginning on the first day of each calendar ☐ month ☐ quarter after the Effective Date (Cure Payments).  Ongoing payments shall be made  ☐ as they come due based on their respective governing loan documents (Regular Payments), or  ☐ in modified payments as described below.  The amount of the claim, if any, in excess of the secured claim is an unsecured claim in Class 6.  However, if the holder of a secured claim makes a timely and valid §1111(b) election, the claim shall be treated as a secured claim notwithstanding § 506(a).

        The following chart lists Class 5 claims and their proposed treatment under the Plan:

Class 5(a):  Secured claim of: **MTGLQ Investors, LP and/or Rushmore ("Claimant")**
Property address or description of collateral: **4-plex at 14535 Weddington Street, Van Nuys, CA 91411. Debtor lives in Unit No. 1; Unit No. 2 has month-to-month tenant, $930/month ($600 deposit); Unit No. 3 has a 1 year lease which commenced 2/1/2015 for $930/month ($600 deposit); Unit No. 4 has a 1 year lease which commenced 4/1/2015 for $975/month ($600 deposit); see attached chart re lease information. Court-ordered value of this property is $580,000 (Docket No. 84).**
Priority of lien: **FIRST**
Total amount of allowed claim: **$857,575 (per POC)**
Interest rate: **4%**
Monthly payment: **$2,947.76 (principal and interest) PLUS $884.88 (tax escrow) = $3,832.64**
First payment date: **  8/1/2015**
Treatment: **The Treatment of Class 5(a) shall be pursuant to that Stipulation executed by the parties at Docket Number 97, and related Order thereon at Docket Number 99, which are incorporated herein by this reference, and summarized as follows:  Debtor will pay Claimant $705,309.26 at 4% interest amortized over 40 years (the "secured claim amount"). The remainder of the claim ($157,247.87) will be treated as unsecured and paid its *pro rata* share of the payments made to that class [6(b)]. True and correct copies of the Stipulation and Order are attached hereto as Exhibit A.**

Class 5(b):  Secured claim of:
     Property address or description of collateral:
     Priority of lien:
     Total amount of allowed secured claim as of:
     Total amount of payments (over time) to satisfy the secured claim: $_____
     Interest rate (to compensate creditor because claim is paid over time):_____%
     First payment date: _____
     Amount of each installment: $_____
     Frequency of payments: _____
     Total yearly payments: $_____
     Final payment date: _____
     Monthly payments will be due on the first day of the month.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                        Page 6                                        **F 2081-1.PLAN**

If a secured creditor disputes the value of its collateral as stated above, that secured creditor must timely file an objection to confirmation of the Plan, or the value stated by Debtor may be determined to be the value of the collateral. The objection must be accompanied by competent evidence of valuation.  If the value of the collateral is disputed, the court may schedule a separate hearing to determine value.

To the extent that certain creditors' claims are entitled to various amounts due because defaults are not cured or paid in full on or before the Effective Date, those classes of creditors are impaired and entitled to vote on the Plan.  See Part 2 of the Disclosure Statement for instructions on voting.

**Class 6:  General Unsecured Claims**.

☐      Class 6(a):  Smaller Unsecured Claims.  This class includes any allowed unsecured claim of $_____or less and any allowed unsecured claim larger than $_____but whose holder agrees to reduce its claim to $_____.  Each member of this class shall receive on the Effective Date, or as soon as practicable thereafter, a single payment equal to 100% of the allowed claim.  This class is unimpaired and not entitled to vote on the plan.

☒      Class 6(b):  Other General Unsecured Creditors.  This class includes all allowed unsecured claims not in Class 6(a) and not entitled to priority.  Each member of Class 6(b) shall be paid_____**4.3%** of its claim over **5** years   in equal  ☒ monthly ☐ quarterly installments, due on the first day of each calendar ☒ month ☐ quarter, ☐ with interest at the rate of_____% per annum ☒ without interest starting on the FIRST DAY OF THE MONTH FOLLOWING ~~such date~~ after the Effective Date (SEE EXHIBIT A to Disc. State.).  If payments are not proposed as equal monthly installments, they will be paid as follows: _____

This class is impaired and entitled to vote on confirmation of the Plan.  For instructions on voting, see Part 2 of the Disclosure Statement.

Undisputed Class 6 claims, as of this date, are listed on Exhibit C to the Disclosure Statement.

### Article III
### Allowance and Disallowance of Claims

A.      Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed and as to which  either: (i) a proof of claim has been filed or deemed filed and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed and the Debtor has scheduled such claim as disputed, contingent, unliquidated or unknown.

B.      Delayed Distribution on Disputed Claims.  No distribution will be made on account of that portion of a claim that is disputed unless it is allowed by final nonappealable order.

C.      Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with FRBP 9019 unless the amount allowed by the compromise does not exceed $10,000 in which case no court approval is necessary.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*          Page 7          **F 2081-1.PLAN**

**Article IV**
**Executory Contracts and Unexpired Leases**

A.    Executory Contracts and Leases Assumed.  The Debtor assumes the executory contracts and unexpired leases enumerated in Exhibit E to the Disclosure Statement, effective upon the Effective Date, and shall perform all obligations thereunder, both preconfirmation and postconfirmation.  Any preconfirmation arrearages shall be paid by the Effective Date, unless the parties agree otherwise or the court finds that a proposed payment schedule provides timely cure and adequate assurance of future performance.  Postconfirmation obligations will be paid as they come due.

B.    Executory Contracts and Leases Rejected.  The Debtor is conclusively deemed to have rejected all executory contracts and/or unexpired leases not previously assumed or listed in Exhibit E to the Disclosure Statement as of the Effective Date.  A proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the date of the order confirming this Plan.  Claims arising from the rejection of an executory contract or unexpired lease under this section are general unsecured claims in Class 6, except to the extent this court orders otherwise.

**Article V**
**Means of Implementation**

The Plan will be funded through (*Check each box that applies*):

a.    ☒    **$5,800** *(funds in DIP bank accounts )* of cash available on the date of the Plan confirmation hearing;

b.    ☐    A sale of the following property (*describe*): _____ which the Debtor estimates will produce $_____;

c.    ☒    additional cash from projected income (projected to be approx. **$6,535/month** for  the **5** year(s)[5] following confirmation)**[SEE EXHIBIT A TO DISCLOSURE STATEMENT FOR INCOME AND EXPENSES FOR THE 5 YEAR PLAN TERM];** and/or

d.    ☐    other sources of funding, as follows:

Please see Part 3 of the Disclosure Statement for further details of these projections.

**Article VI**
**Discharge and Other Effects of Confirmation**

A.    Discharge.  Upon completion of all payments under the Plan, **or as 11 U.S.C. §1141(d)(5)(B) otherwise provides,**  the Debtor shall receive a discharge of all  preconfirmation debts, whether or not the creditor files a proof of claim, or accepts the Plan, unless the court orders   otherwise.  Such discharge will not discharge Debtor from any debts that are nondischargeable under § 523 or the  obligations created by this Plan.

B.    Vesting of Property.  On the Effective Date, all property of the estate will vest in the reorganized debtor pursuant to § 1141(b), free and clear of all claims and interests except as provided in the Plan.

C.    Plan Creates New Obligations.  Except as otherwise stated in the Plan, the payments promised in the Plan constitute new contractual obligations that replace those obligations to creditors that existed prior to the Effective Date.

D.    Creditor Action Restrained.  Creditors may not take any action to enforce either preconfirmation obligations or obligations due under the Plan, so long as the Debtor is not in material default under the Plan.  If the Debtor is in material default under the Plan, affected creditors may:  (i) take any action permitted under nonbankruptcy law to enforce the terms of the Plan; or (ii) move to dismiss this case or to convert this case to a chapter 7 bankruptcy case.

---

[5] This number should match the number of years selected for payments made to creditors under the plan and the number of years of projected disposable income calculated in Part 3.C. of the Disclosure Statement.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                Page 8                                **F 2081-1.PLAN**

E.      Material Default Defined.  If Debtor fails to make any payment required under the Plan, or to perform any other obligation required under the Plan for more than 14 days after the time specified in the Plan, the affected creditor may serve upon Debtor and Debtor's attorney (if any) a written notice of default.  The Debtor is in material default under the Plan if the Debtor fails within 21 days of the service of such notice of default, plus 3 additional days if served by mail, either:  (i) to cure the default or (ii) to obtain from the court an extension of time to cure the default or a determination that no default occurred.

F.      Retention of Jurisdiction.  This court retains jurisdiction until all Plan payments have been made.

## Article VII
## General Provisions

A.      Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in the Plan.

B.      Effective Date of Plan.  The Effective Date of the Plan is 14 days following the date of the entry of the order confirming the Plan. But, if a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

C.      Cramdown.  Debtor reserves the right to seek confirmation of the Plan notwithstanding the rejection of the Plan by one or more classes of creditors, pursuant to § 1129(b).

D.      Binding Effect.  The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

E.      Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of the Plan.

F.      Controlling Effect.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or FRBP), the laws of the State of California govern the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise provided in this Plan.

G.      Final Decree.  Pursuant to FRBP 3022, a Final Decree may not be entered until a bankruptcy case is fully administered.  The court may, however, allow a Final Decree to be entered at an earlier date if requested in Miscellaneous Provisions (below), or for cause shown.

H.      Miscellaneous Provisions:

i.  *Disbursing Agent:* Debtor shall act as the disbursing agent for the purpose of making the distributions to creditors provided for under the Plan.  The Disbursing Agent shall not be compensated.

ii.  *Post-Confirmation Employment:* After the Confirmation Date, the Reorganized Debtor may employ, without notice, hearing, or order of the Bankruptcy Court, such attorneys, accountants, and other professionals (the "Post-confirmation Professionals") as he may desire to render services on such terms as he deems reasonable.  With respect to services rendered by the Post-confirmation Professionals, the Reorganized Debtor shall be authorized to pay for such services, related costs, and expenses without notice, hearing, or order of the Bankruptcy Court.

iii.  *Compensation of Debtor's Counsel:* In the event there is a default by Debtor in his payment of fees to Simon Resnik Hayes LLP ("SRH"), SRH will give the Debtor notice of the default by electronic mail and advise the Debtor that he has ten (10) days to cure the default.  If Debtor does not cure within that time period, SRH will be permitted to accelerate the balance due at the time and enforce the order of this Court approving the fees by whatever means are available to it including the costs and expenses related to the recording of the order and costs of collection.  SRH shall not be required to get any further approval of this Court for payments related to outstanding fees. SRH and Debtor are permitted to communicate and agree to payment of SRH's administrative claim on an expedited basis, if the ability to pay arises.

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                                    Page 9                                    **F 2081-1.PLAN**

I.    ☐    Addendum attached, see addendum.

Date: 10/8/2015                                        By:  /s/ Grigor Dumanyan
                                                            Signature of Debtor


                                                      Name:  Grigor Dumanyan
                                                            Printed name of Debtor


Date: 10/8/2015                                        By:  /s/ Roksana D. Moradi
                                                            Signature of attorney for Debtor, if any


                                                      Name:  Roksana D. Moradi
                                                            Printed name of attorney for Debtor, if any

---

This form is optional.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2012*                          Page 10                          **F 2081-1.PLAN**

# EXHIBIT A

1   CHRISTOPHER M. MCDERMOTT (SBN 253411)
    cmcdermott@aldridgepite.com
2   TODD S. GARAN (CA SBN 236878)
    tgaran@aldridgepite.com
3   **ALDRIDGE PITE, LLP**
    4375 Jutland Dr., Ste. 200
4   P.O. Box 19734
    San Diego, CA 92177-9734
5   Telephone: (858) 750-7600
    Facsimile: (619) 590-1385
6

7   Attorneys for: MTGLQ Investors, LP

8

9             **UNITED STATES BANKRUPTCY COURT**

10   **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

11

| | |
|---|---|
| 12   In re | Case No. 1:14-bk-13347-VK |
| 13   GRIGOR DUMANYAN, | Chapter 11 |
| 14         Debtor and Debtor in Possession. | **STIPULATION RE: TREATMENT OF CREDITOR'S CLAIM UNDER DEBTOR'S PROPOSED CHAPTER 11 PLAN OF REORGANIZATION** |
| | **Class 5(a)** |
| | **Subject Property:** 14535 Weddington Street Sherman Oaks Area, California 91411 |

      This Stipulation Re: Treatment of Creditor's Claim ("**Stipulation**") is entered into by and between Secured Creditor, MTGLQ Investors, LP ("**Creditor**"), and Debtor, Girgor Dumanyan (the "**Debtor**"), by and through their respective attorneys of record.

      The real property which is the subject of this matter is commonly known as 14535 Weddington Street, Sherman Oaks Area, California 91411 (hereinafter the "**Subject Property**"), which is more fully described in the Deed of Trust attached hereto as Exhibit B and incorporated herein by this reference.

      The Loan is evidenced by a promissory note dated January 26, 2008, executed by Debtor to Wells Fargo Bank, N.A. ("**Lender**") in the principal sum of $631,200.00 (the "**Note**"). A copy of

1   the Note is attached hereto as **Exhibit A** and incorporated herein by reference.

2       The Note is secured by a 1st Deed of Trust (the "**Deed of Trust**") granting Lender a security

3   interest in the Subject Property and rents generated therefrom, which is more fully described in the

4   Deed of Trust. The Deed of Trust was duly recorded on February 13, 2008, in the official records of

5   the Los Angeles County Recorder's office, State of California as Document Number 20020259872.

6   A copy of the Deed of Trust is attached hereto as **Exhibit B** and incorporated herein by reference.

7   The Note and Deed of Trust may be referred to collectively herein as the "**Loan**."

8       Subsequently, Lender's beneficial interest in the Loan was assigned and transferred to

9   Creditor. The Note reflects that it is endorsed in blank.

10      On or about July 11, 2014, Debtor filed a voluntary petition for relief under Chapter 13 of the

11  Bankruptcy Code in the United States Bankruptcy Court for the Central District of California, San

12  Fernando Division, and was assigned Case No. 1:14-bk-13347-VK. On January 22, 2015, Debtor

13  converted his case to one under Chapter 11. *See, Docket Number 33.*

14      On or about August 6, 2014, Lender filed a Proof of Claim against Debtor's Bankruptcy

15  Estate in the amount of $857,574.33, secured by the Subject Property with pre-petition arrears in the

16  amount of $280,633.07. A copy of Lender's Proof of Claim may be found on the Court's Claims

17  Registry as Claim Number 4. On September 11, 2015, a Transfer of Claim was filed whereby all of

18  Lender's interest in the claim was assigned and transferred to Creditor. *See, Docket Number 92.*

19      On February 24, 2015, Debtor and Lender entered into Cash Collateral Stipulation with

20  respect to the rents being generated at the Subject Property. *See, Docket Number 49.* On March 9,

21  2015, the Court entered an Order on the parties Cash Collateral Stipulation. *See, Docket Number 57.*

22      On June 30, 2015, Debtor filed his Chapter 11 Plan. *See, Docket Number 72.* Creditor's

23  Claim is identified as a Class 5(a) Impaired Secured Claim. *Id.*

24      On July 10, 2015, Debtor filed a Motion to Value the Collateral with respect to the Subject

25  Property. *See, Docket Number 78.* On August 14, 2015, the Court entered an Order on Debtor's

26  Motion to Value and setting the market value of the Subject Property at $580,000.00. *See, Docket*

27  *Number 84.*

28      On August 20, 2015, Lender filed an 1111(b) Election with respect to its claim. *See, Docket*

*Number 86.*

Debtor acknowledges that Creditor has made two post-petition property tax advances with respect to the Subject Property: 1) $5,309.26 on 11/21/2014; and 2) $5,309.26 on 7/21/2015.

In exchange for Creditor withdrawing its 1111(b) Election, the parties have agreed to a mutual treatment of Creditor's claim for the Debtor's Chapter 11 Plan.

**THE PARTIES STIPULATE AS FOLLOWS:**

1.  Creditor (its successors or assigns) shall have a fully secured claim in the amount of $705,309.26 to be amortized over 40 years at a fixed interest rate of 4% per annum (the **"Secured Claim"**).

2.  Creditor shall have an unsecured claim in the amount of $157,247.87, which includes Creditor's post-petition attorneys' fees and costs associated with Debtor's case (the "**Unsecured Claim**"). Creditor shall receive, in full and final satisfaction of its Unsecured Claim, its pro rata share of the dividend issued to general unsecured creditors under Debtor's Chapter 11 Plan, as amended.

3.  Debtor shall tender regular monthly principal and interest payments to Creditor (and/or its servicer) in the amount of $2,947.76 on the first day of each month for the Secured Claim commencing **October 1, 2015** and continuing on the first day of each month thereafter until September 1, 2055 when all outstanding amounts owed on the Secured Claim, including any escrow payments and/or charges as required per the terms and provisions of this Stipulation and/or the Note and Deed of Trust, are to be paid in full.

4.  In addition to the payments described in paragraph 3 of this Stipulation, Debtor shall tender to Creditor (and/or its servicer) all necessary escrow payments for any and all real property tax advances made by Creditor (and/or it servicer) for the Subject Property. Debtor shall tender the necessary escrow payment together with the regular monthly payment described in paragraph 3 above, commencing on **October 1, 2015** and continuing on the first day of each month thereafter until September 1, 2055 when all outstanding amounts owed under the Secured Claim, which include any escrow payments and/or charges, are to be paid in full. The amount of the current escrow payment is $884.88; however, Debtor understand the amount of the escrow payment is

1  subject to change per any updated or revised escrow statement as provided by Creditor (and/or is

2  servicer).

3       5.     Effectively immediately, Debtor is required to obtain and maintain real property

4  insurance for the Subject Property and in accordance with any requirements set forth in the Deed of

5  Trust.  Debtor agrees to provide Creditor (and/or its servicer) proof of said insurance within 5

6  business days of executing this Stipulation.  In the event Debtor fails to maintain insurance as

7  required hereunder, then Creditor (and/or its servicer) may, in its sole discretion: 1) obtain insurance

8  for the Subject Property and thereafter require Debtor to tender monthly escrow payments to

9  reimburse Creditor (and/or its servicer) for any and all insurance advances made by Creditor (and/or

10  its servicer) for the Subject Property along with property tax advances per paragraph 4 above; and/or

11  2) treat any such failure to maintain insurance for the Subject Property as required hereunder a

12  default of this Stipulation.   In the event Creditor (and/or its servicer) requires Debtor to tender

13  escrow payments for insurance, Debtor shall continue to tender such escrow payments on the first

14  day of each month thereafter along with the regular monthly payment and property taxes required by

15  paragraphs 3 and 4 of this Stipulation until September 1, 2055 at which time the Secured Claim,

16  which includes outstanding escrow advances are to be paid in full by Debtor.

17       6.     <u>Cash Collateral Stipulation</u>:  The Cash Collateral Stipulation on file at *Docket*

18  *Number 49* and related Order thereon at *Docket Number 57* shall be deemed modified only to the

19  extent as stated herein.   The payments required by paragraphs 3 and 4 of this Stipulation shall

20  replace the AP Payment to Creditor required per paragraph 5 and Debtor's property tax and

21  insurance obligations per paragraph 6 of the Cash Collateral Stipulation as the account is escrowed

22  for property taxes only pursuant to this Stipulation.  The remaining terms and provisions of the Cash

23  Collateral Stipulation shall remain in effect to the extent not inconsistent with the terms and

24  provisions of this Stipulation until a Termination Event occurs as specified in the Cash Collateral

25  Stipulation.

26       7.     <u>Post-Petition Advances</u>.  Debtor agrees that within 3 business days of executing this

27  Stipulation, Debtor shall reimburse Creditor (and/or its servicer) the amount of $5,309.26, by

28  certified funds, for its post-petition property tax advance made on 7/21/2015. This payment shall be

1 | forwarded to Creditor's counsel. The other post-petition property tax advance made on 11/21/2014

2 | in the amount of $5,309.26 is included in the Secured Claim.

3 |       8.    <u>Pre-Confirmation Default</u>: In the event of any default on any of the provisions of this

4 | Stipulation prior to confirmation of Debtor's Chapter 11 Plan, Creditor (and/or its servicer) shall

5 | provide written notice, via certified mail, to Debtor at the Subject Property and to Debtor's attorney

6 | of record, indicating the nature of default. If Debtor fails to cure the default or payment default with

7 | certified funds after the passage of thirty (30) calendar days from the date said written notice is

8 | placed in the mail as reflected on the certified receipt, then the Automatic Stay shall terminate,

9 | unless it has already been terminated by operation of law, and Creditor (and/or its servicer) may

10 | commence any and all action necessary to obtain complete possession of the Subject Property under

11 | the terms of the Loan and applicable state law, including but not limited to foreclosure thereof,

12 | without further notice, order, or proceeding of this Court.

13 |       9.    <u>Post-Confirmation Default</u>. Upon confirmation of Debtor's Chapter 11 Plan, the

14 | Automatic Stay shall be deemed terminated as to the Debtor and estate, and the Creditor (and/or its

15 | servicer) will no longer have to comply with paragraph 8 above. Instead, Creditor (and/or its

16 | servicer) may provide Debtor notice of any default related to the Stipulation in accordance with the

17 | Loan, and applicable state law and/or proceed with all its remedies under the terms of the Loan and

18 | applicable state law, including but not limited to foreclosure of the Subject Property, without further

19 | notice, order, or proceeding of this Court.

20 |       10.   In the event the Debtor defaults under this Stipulation and Creditor (and/or its

21 | servicer) forwards a 30-day default letter to Debtor's and their counsel, Debtor shall be required to

22 | tender Creditor's reasonable attorneys' fees and costs for each default letter submitted, in addition to

23 | the default amount stated therein, in order to cure the default. Any notice of default that Creditor

24 | (and/or its servicer) provides Debtor and/or Debtor's attorneys pursuant to this Stipulation shall not

25 | be construed as a communication under the Fair Debt Collection Practices Act, 15 U.S.C. §1692

26 |       11.   Any forbearance by Creditor (and/or its servicer) in exercising any right or remedy,

27 | including, without limitation, Creditor (and/or its servicer) accepting payments from third persons,

28 | entities or successors in interest to Debtor, or in amounts less than the amount due, including as

1   provided for under this Stipulation, shall not be a waiver of or preclude the Creditor's (and/or

2   servicer) exercise of any right or remedy, or act as a waiver of Creditor's right to proceed hereunder

3   or under the Loan.

4         12.     Except as otherwise expressly provided for herein, all remaining terms of the Note

5   and Deed of Trust, which are incorporated herein by this reference, shall govern the treatment of

6   Creditor's Secured Claim.

7         13.     At the request of the Creditor (and/or its servicer), the Debtor shall execute such

8   documents and instruments as requested to reflect the Debtor as the borrower of the Secured Claim

9   to conform with the provisions of the this Stipulation as Creditor (and/or its servicer) deems

10  necessary.

11        14.     Except as expressly provided herein, the Debtor waives any and all claims, causes of

12  action, whether known or unknown, he currently has against Creditor, and its respective agents,

13  parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent holders of the Loan,

14  successors and assigns in relation to the Loan referenced herein and any and all agreements which

15  exist between them regarding or relating to the Loan prior to the date of this Stipulation. This waiver

16  includes Debtor's right to object to Creditor's Claim. The Debtor also releases Creditor and its

17  respective agents, parents, affiliates, subsidiaries, attorneys, predecessors, current and subsequent

18  holders of the Loan, successors and assigns from any liability in relation to the Loan prior to the date

19  of this Stipulation.

20        15.     In the event the Debtor seeks to sell the Subject Property at anytime prior to

21  confirming his Chapter 11 Plan, or if Debtor seeks to sell the Subject Property through his Chapter

22  11 Plan, Creditor shall be entitled to credit bid at any such sale in an amount not less than the full

23  unmodified, original outstanding balance owing under the terms of the Loan and/or exercise any of

24  its rights pursuant to 11 U.S.C. §§ 363(b), (f) and (k) as applicable, and shall be permitted to receive

25  proceeds from the sale of the Subject Property in an amount not less than the full unmodified,

26  original outstanding balance owing under the terms of the Loan at said time.

27        16.     In the event the Debtor seeks to sell or refinance the Subject Property at anytime after

28  his Plan is confirmed, but prior to substantially consummating his Chapter 11 Plan and receiving his

Chapter 11 discharge, Creditor (and/or its servicer) shall not be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale of the Subject Property in an amount not less than the full, unmodified, original outstanding balance owing under the terms of the Loan, less any payments received to such date. If the proposed sale of the Subject Property is for less than the full, unmodified, outstanding balance owing under the Loan, then Creditor's consent must be obtained in writing prior to any such sale. In the event the Debtor seeks to sell or refinance the Subject Property after substantial consummation of his Chapter 11 Plan and receiving her Chapter 11 discharge, the foregoing requirements of this paragraph 16 no longer apply; however, in no event shall Creditor (and/or its servicer) be required to remove its lien encumbering the Subject Property unless it receives proceeds from the sale or refinance of the Subject Property in an amount not less than the Secured Claim, which includes any escrow amounts due, less any payments received to such date.

17.    In the event the Debtor asserts that Creditor has failed to properly update its internal system to comply with the terms of this Stipulation within a reasonable period of time after an order is entered confirming the Debtor's Chapter 11 Plan of Reorganization, which shall be not less than ninety (90) days, the Debtor shall be required to provide written notice of the alleged lack of compliance to Creditor and Creditor's counsel of record, Aldridge Pite, LLP at 4375 Jutland Drive, Suite 200, San Diego, CA 92117, indicting the nature of the alleged lack of compliance. If Creditor fails to either remedy the alleged lack of compliance and/or provide an explanation refuting the Debtor's allegation after the passage of ninety (90) days from the date Creditor receives said written notice (the "**Meet and Confer Period**"), Debtor may proceed with filing the appropriate motion in bankruptcy court seeking Creditor's compliance.

18.    Upon executing this Stipulation, and as a condition of the terms herein, Debtor shall be required to attach a copy of this Stipulation to any Chapter 11 Plan filed in this case as an exhibit, including any modifications thereto or amended Chapter 11 Plan, and the Plan shall expressly incorporate the terms and provisions of this Stipulation into Debtor's Chapter 11 Plan or any amended or modified Chapter 11 Plan by reference. In addition, Debtor shall provide Creditor's counsel with a copy of the proposed Chapter 11 Plan, or any modification or amendment thereto, for

1    review prior to filing the same with the Court to ensure the terms and provisions of this Stipulation

2    are fully incorporated therein to the satisfaction of Creditor's counsel so as to avoid additional costs

3    with ensuring compliance with the terms and provisions of this Stipulation. In the event of a conflict

4    between a provision of Debtor's Plan and the Stipulation, the Stipulation shall control. Further, the

5    terms and provisions of this Stipulation may not be modified, altered, or changed by the Chapter 11

6    Plan, any subsequently filed amended or modified Chapter 11 Plan of Reorganization and/or

7    confirmation order on the foregoing without the express written consent of the Creditor.

8         19.    In the event the Debtor's case is dismissed or converted to any other chapter under

9    Title 11 of the United States Bankruptcy Code, Creditor shall retain its lien in the full, unmodified

10   amount due under the Loan since the commencement of these proceedings, less any payments

11   received to such date.

12        20.    In exchange for the forgoing, Creditor shall provide a ballot voting in favor of the

13   Debtor's Chapter 11 Plan of Reorganization for the Secured Claim and the Unsecured Claim.

14

15   Dated: ____10/1____, 2015         SIMON RESIK HAYES, LLP.

16

17                          By: _____

                           Roksana D. Moradi

18                              M. Jonathan Hayes

                           Attorneys for Debtor

19   Dated: ____10/1____, 2015         ALDRIDGE PITE, LLP

20

21                          By: _____

                           Todd S. Garan

22                              Attorneys for Creditor

23

24

25

26

27

28

Redacted

# FIXED RATE NOTE

JANUARY 26, 2008                    NORTHRIDGE                    CALIFORNIA
*Date*                              *City*                        *State*

14535 WEDDINGTON STREET, SHERMAN OAKS AREA, CA  91411
                              *(Property Address)*

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    631,200.00       (this amount is called "Principal"), plus interest, to the order of the Lender.  The Lender is _____
WELLS FARGO BANK, N.A.    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note.  The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid.  I will pay interest at a yearly rate of   6.500  %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on    MARCH 1, 2008    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal.

If, on FEBRUARY 1, 2038         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO BANK, N.A. _____
P.O. BOX 11701, NEWARK, NJ  07101-4701
or at a different place if required by the Note Holder. .

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    3,989.62       .

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use all of my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

Exhibit A

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be the greater of $ 5.00 or 5.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

# Exhibit A

Redacted

## 10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions.  In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note.  That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.  Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument.  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
GRIGOR DUMANYAN                    -Borrower

(Sign Original Only)



WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY _____
Joan M. Mills, Vice President

# Exhibit A

WITHOUT RECOURSE
PAY TO THE ORDER OF

WELLS FARGO BANK, N.A.
BY
Ethan M. Mills, Vice President

Exhibit A

Exhibit B

**This page is part of your document - DO NOT DISCARD**



**20080259872**  Pages: 024



Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/13/08 AT 08:00AM**

Fee: 79.00
Tax: 0.00
Other: 0.00
Total: 79.00

**Title Company**

# TITLE(S) :



L E A D   S H E E T

**Assessor's Identification Number (AIN)**
**To be completed by Examiner OR Title Company in black ink.**

**Number of AIN's Shown**



**THIS FORM IS NOT TO BE DUPLICATED**



Exhibit B

Recording Requested By:

**WELLS FARGO BANK, N.A.**
**4 EXECUTIVE CIR 250**
**IRVINE, CA  92614-**

Return To:
**WELLS FARGO BANK, N.A.**
**FINAL DOCUMENTS X9999-01M**
**1000 BLUE GENTIAN ROAD**
**EAGAN, MN  55121-1663**
Prepared By:
**SMS TEAM**
**WELLS FARGO BANK, N.A.**
**4 EXECUTIVE CIR 250**
**IRVINE, CA  92614-**

Redacted



02/13/08

**20080259872**

——[Space Above This Line For Recording Data]——

# DEED OF TRUST

Redacted

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated **JANUARY 26, 2008** together with all Riders to this document.
**(B) "Borrower"** is
**GRIGOR DUMANYAN, A SINGLE MAN**

Borrower is the trustor under this Security Instrument.
**(C) "Lender"** is  **WELLS FARGO BANK, N.A.**

Lender is a **National Association**
organized and existing under the laws of  **THE UNITED STATES OF AMERICA**

**CALIFORNIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          **FORM 3005    1/01**

Page 1 of 18          Initials: _GD_          SCA01    Rev  11/09/00

Exhibit B

Lender's address is
**P. O. BOX 5137, DES MOINES, IA 50306-5137**
Lender is the beneficiary under this Security Instrument.

**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INSURANCE COMPANY**

**(E) "Note "** means the promissory note signed by Borrower and dated **JANUARY 26, 2008** .
The Note states that Borrower owes Lender **SIX HUNDRED THIRTY-ONE THOUSAND
TWO HUNDRED AND NO/100**                                                  Dollars
(U.S. $ .....**631,200.00**............) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    **FEBRUARY 1, 2038**
**(F) "Property"** means the property that is described below under the heading "Transfer of
Rights in the Property."

**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges
and late charges due under the Note, and all sums due under this Security Instrument, plus
interest.

**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower.
The following Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes,
regulations, ordinances and administrative rules and orders (that have the effect of law) as
well as all applicable final, non-appealable judicial opinions.

**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees,
assessments and other charges that are imposed on Borrower or the Property by a
condominium association, homeowners association or similar organization.

**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction
originated by check, draft, or similar paper instrument, which is initiated through an
electronic terminal, telephonic instrument, computer, or magnetic tape so as to order,
instruct, or authorize a financial institution to debit or credit an account. Such term includes,
but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers
initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L) "Escrow Items"** means those items that are described in Section 3.

**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages
described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation
or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or
(iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.

**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and
interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et
seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be
amended from time to time, or any additional or successor legislation or regulation that

SCA02    Rev 12/18/00              Page 2 of 18        Initials: _____        **FORM 3005    1/01**

**Exhibit B**



governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA. **(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's convenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

| **County** | of | **LOS ANGELES** | : |
|---|---|---|---|
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

APN: 2249-005-017
**"PLEASE SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"**

### SEE EXHIBIT "A" ATTACHED

### THIS IS A PURCHASE MONEY MORTGAGE.

Parcel ID Number:                                        which currently has the address of
**14535 WEDDINGTON STREET**                                                          [Street]
**SHERMAN OAKS AREA**                      [City] , California       **91411**      [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

SCA03   Rev 11/09/00              Page 3 of 18        Initials: GD         FORM 3005   1/01

08 0259872

Exhibit B

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the
Note and any prepayment charges and late charges due under the Note. Borrower shall
also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and
this Security Instrument shall be made in U.S. currency. However, if any check or other
instrument received by Lender as payment under the Note or this Security Instrument is
returned to Lender unpaid, Lender may require that any or all subsequent payments due
under the Note and this Security Instrument be made in one or more of the following forms,
as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's
check or cashier's check, provided any such check is drawn upon an institution whose
deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds
Transfer.

Payments are deemed received by Lender when received at the location designated in
the Note or at such other location as may be designated by Lender in accordance with the
notice provisions in Section 15. Lender may return any payment or partial payment if the
payment or partial payments are insufficient to bring the Loan current. Lender may accept
any payment or partial payment insufficient to bring the Loan current, without waiver of any
rights hereunder or prejudice to its rights to refuse such payment or partial payments in the
future, but Lender is not obligated to apply such payments at the time such payments are
accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender
need not pay interest on unapplied funds. Lender may hold such unapplied funds until
Borrower makes payment to bring the Loan current. If Borrower does not do so within a
reasonable period of time, Lender shall either apply such funds or return them to Borrower.
If not applied earlier, such funds will be applied to the outstanding principal balance under
the Note immediately prior to foreclosure. No offset or claim which Borrower might have
now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured
by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2,
all payments accepted and applied by Lender shall be applied in the following order of
priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due
under Section 3. Such payments shall be applied to each Periodic Payment in the order in
which it became due. Any remaining amounts shall be applied first to late charges, second
to any other amounts due under this Security Instrument, and then to reduce the principal
balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which
includes a sufficient amount to pay any late charge due, the payment may be applied to the
delinquent payment and the late charge. If more than one Periodic Payment is outstanding,
Lender may apply any payment received from Borrower to the repayment of the Periodic
Payments if, and to the extent that, each payment can be paid in full. To the extent that any
excess exists after the payment is applied to the full payment of one or more Periodic
Payments, such excess may be applied to any late charges due. Voluntary prepayments
shall be applied first to any prepayment charges and then as described in the Note.

Exhibit B



Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be

Exhibit B

required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination

Exhibit B

or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In

Exhibit B

*9*

either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or

00 0259972

Exhibit B

*10*

(c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

SCA09   Rev 11/13/00          Page 9 of 18      Initials: *GV*       FORM 3005   1/01

Exhibit B

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exhange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

Exhibit B

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by

08 0259872

Exhibit B

this Security Instrument by reason of any demand made by the original Borrower or any Successors In Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provision of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to. Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly

Exhibit B

requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**Exhibit B**

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer or servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.

Exhibit B

*16*

The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environment Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or**

08 0259837 2

Exhibit B

before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Exhibit B

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
                                             GRIGOR DUMANYAN                Borrower


_____

Exhibit B

19

State of California,                     ss:

County of Los Angeles

On 1-28-08 before me, E. Orozco, Notary Public

<span>personally appeared</span>

**GRIGOR DUMANYAN, A SINGLE MAN**



, ~~personally known to me~~
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/~~are~~ subscribed to the within instrument and acknowledged to me that he/~~she/they~~
executed the same in his/~~her/their~~ authorized capacity(~~ies~~), and that by his/~~her/their~~
signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s)
acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)





08 0259872

SCA16    Rev 10/17/00         Page 18 of 18        Initials: GD        FORM 3005    1/01

Exhibit B





Exhibit B

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of _Los Angeles_ }

On _1-28-08_ before me, _E. Orozco, Notary Public,_
Date                        Here Insert Name and Title of the Officer

personally appeared _Grigor Dumanyan_
                              Name(s) of Signer(s)

who <u>proved to me on the basis of satisfactory evidence</u> to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
                    Signature of Notary Public

**E. OROZCO**
Commission # 1730633
Notary Public - California
Los Angeles County
My Comm. Expires Mar 11, 2011

Place Notary Seal Above

─────────── *OPTIONAL* ───────────

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

**Description of Attached Document**

Title or Type of Document: _Deed of Trust_

Document Date: _1-26-08_                Number of Pages: _18_

Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

Signer's Name: _____
☐ Individual
☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER
Top of thumb here

©2007 National Notary Association • 9350 De Soto Ave., P.O. Box 2402 • Chatsworth, CA 91313-2402 • www.NationalNotary.org   Item #5907   Reorder: Call Toll-Free 1-800-876-6827

08 0259872

Exhibit B

𝓗

# 1-4 FAMILY RIDER

**(Assignment of Rents)**

<span style="color:red">Redacted</span>

THIS 1-4 FAMILY RIDER is made this ....26th day of JANUARY, 2008....................., and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to ..WELLS FARGO BANK, N.A..........................................................................................................
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at: ........14535 WEDDINGTON STREET.................................................................................................
.............................SHERMAN OAKS AREA, CA  91411................................................................................
*(Property Address)*

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are now or hereafter attached to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF THE PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

MULTISTATE 1-4 FAMILY RIDER                              Form 3170 1/01  (Page 1 of 3)
FNMA/FHLMC Uniform Instrument                            EC024L Rev. 11/13/00

08 0259872

Exhibit B

Redacted

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H.\* ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

MULTISTATE 1-4 FAMILY RIDER                     Form 3170 1/01   (Page 2 of 3)
FNMA/FNLMC Uniform Instrument                   EC024L  Rev. 11/13/00

Exhibit B

*p3*

Redacted

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

\* Section H is deleted in its entirety if the Property is located in the State of Michigan.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____(Seal)
GRIGOR DUMANYAN                                        -Borrower

MULTISTATE 1-4 FAMILY RIDER                          Form 3170 1/01   (Page 3 of 3)
FNMA/FNLMC Uniform Instrument                        EC024L Rev. 11/13/00

08  0259872

**Exhibit B**

24

Title Order Number: <span style="color:red">Redacted</span>

File Number:

**Exhibit "A"**

Real property in the City of Los Angeles, County of Los Angeles, State of California, described as follows:

LOT 12 OF TRACT NO. 10071, IN THE CITY OF LOS ANGELES, IN THE COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 140, PAGE(S) 69 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN: 2249-005-017

Exhibit B

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4375 Jutland Drive, Suite 200
P.O. Box 17933
San Diego, CA 92177-0933

A true and correct copy of the foregoing document entitled (*specify*): <u>Stipulation Re: Treatment of Creditor's Claim Under Debtor's Proposed Chapter 11 Plan of Reorganization</u> will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>:** Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) <u>October 7, 2015</u>I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**Debtor's Attorney:** kevin@srhlawfirm.com; jhayes@srhlawfirm.com

**U.S. Trustee:** ustpregion16.wh.ecf@usdoj.gov, russell.clementson@usdoj.gov

☐ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>:**
On (*date*) <u>October 7, 2015</u> I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Grigor Dumanyan
14535 Weddington #1
Sherman Oaks, CA 91411

Honorable Victoria S. Kaufman
Central District of California - San Fernando Valley Division
21041 Burbank Blvd,
Woodland Hills, CA 91367-6606

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u> (state method for each person or entity served):** Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| October 7, 2015 | JUSTIN WADE | /s/ JUSTIN WADE |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

1  CHRISTOPHER M. MCDERMOTT (SBN 253411)
   cmcdermott@aldridgepite.com
2  TODD S. GARAN (CA SBN 236878)
   tgaran@aldridgepite.com
3  **ALDRIDGE PITE, LLP**
   4375 Jutland Dr., Ste. 200
4  P.O. Box 19734
   San Diego, CA 92177-9734
5  Telephone: (858) 750-7600
   Facsimile:  (619) 590-1385
6
7  Attorneys for MTGLQ Investors, LP ("Creditor")

FILED & ENTERED

OCT 08 2015

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY Briggs     DEPUTY CLERK

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

10  In re                                    Case No. 1:14-bk-13347-VK

11  GRIGOR DUMANYAN,                         Chapter 11

12        Debtor                             **ORDER ON  STIPULATION RE:
                                             TREATMENT OF CREDITOR'S CLAIM
13                                           UNDER DEBTOR'S PROPOSED
                                             CHAPTER 11 PLAN OF
14                                           REORGANIZATION**

15                                           **Class 5(a)**

16                                           **Subject Property:**
                                             14535 Weddington Street
17                                           Sherman Oaks Area, California 91411

18
          MTGLQ Investors, LP ("**Creditor**"), by and through its counsel of record, Robert P.
19
    Zahradka of Aldridge Pite, LLP: Debtor, Grigor Dumanyan ("**Debtor**"), by and through his
20
    attorney of record, Kevin T Simon; have executed and filed a Stipulation Regarding Treatment of
21
    Creditor's Claim Pursuant to Debtor's Chapter 11 Plan ("**Stipulation**") in regards to the Real
22
    Property commonly described as 14535 Weddington Street, Sherman Oaks Area, California 91411
23
    ("**Subject Property**"). *See, Docket Number 97:*
24
    /././
25
    /././
26
    /././
27
    /././
28

                                          - 1 -

1    **IT IS HEREBY ORDERED:**

2    1.    The Stipulation Regarding Treatment of Creditor's Claim Under Debtor's Chapter

3  11 Plan that was filed on October 7, 2015, at docket number <u>97</u> is hereby adopted as an Order of

4  the Court.

5                          ###

Date: October 8, 2015

Victoria S. Kaufman
United States Bankruptcy Judge

- 2 -

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  **15233 Ventura Blvd., Suite 250, Sherman Oaks, CA 91403.**

A true and correct copy of the foregoing document entitled **FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION** be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** –
Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **10/8/2015** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Russell Clementson    russell.clementson@usdoj.gov**
- **Angela Frazier    angela.frazier@wellsfargo.com**
- **Todd S Garan    ch11ecf@aldridgepite.com,
    TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com**
- **Marian Garza    ecfnotices@ascensioncapitalgroup.com**
- **Arnold L Graff    ecfcacb@aldridgepite.com,
    ALG@ecf.inforuptcy.com;agraff@aldridgepite.com**
- **M Jonathan Hayes    jhayes@srhlawfirm.com,
    roksana@srhlawfirm.com;matthew@srhlawfirm.com;rosarioz@srhlawfirm.com;jfisher@srhlawfirm.com;maria@srhlawfirm.com;staci@srhlawfirm.com;jhayesecf@gmail.com;sevan@srhlawfirm.com;carolyn@srhlawfirm.com;mike@s**
- **Gina J Kim    gjkim@piteduncan.com, ecfcacb@piteduncan.com;GJK@ecf.inforuptcy.com**
- **Kevin T Simon    kevin@srhlawfirm.com, ktsecf@gmail.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- **Robert P Zahradka    ecfcacb@aldridgepite.com,
    RPZ@ecf.inforuptcy.com;rzahradka@aldridgepite.com**

**II.  SERVED BY U.S. MAIL:** On **10/8/2015** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**Hon. Victoria S. Kaufman**
**U.S. Bankruptcy Court**                                    **Grigor Dumanyan**
**Central District – Valley Branch**              **14535 Weddington Street, #1**
**21041 Burbank Blvd., Suite 354**               **Sherman Oaks, CA 91411**
**Woodland Hills, CA 91367**

**III.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **10/8/2015** I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| 10/8/2015 | Ja'Nita Fisher | /s/ Ja'Nita Fisher |
| Date | Type Name | Signature |

SIMON RESNIK
HAYES LLP